IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 00-cv-02325-MSK-OES

SIERRA CLUB and
MINERAL POLICY CENTER,

     Plaintiffs,

v.

CRIPPLE CREEK AND VICTOR GOLD MINING COMPANY,
ANGLOGOLD ASHANTI (COLORADO) CORPORATION,
ANGLOGOLD ASHANTI NORTH AMERICA, INC., and
GOLDEN CYCLE GOLD CORPORATION,

     Defendants,

and

Civil Action No. 01-cv-2307-MSK-OES

SIERRA CLUB, and
MINERAL POLICY CENTER,

     Plaintiffs,

v.

CRIPPLE CREEK & VICTOR GOLD MINING COMPANY,
ANGLOGOLD (COLORADO) CORPORATION,
ANGLOGOLD NORTH AMERICA, INC., and
GOLDEN CYCLE GOLD CORPORATION,

     Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES'
JOINT MOTION UNDER FED. R. EVID. 702 SEEKING A DETERMINATION
AS TO THE ADMISSIBILITY OF THE OPINIONS OF ROBERT BURM**

THIS MATTER comes before the Court on the parties' joint motion **(#251)** under Fed. R. Evid. 702 asking the Court to determine the admissibility of opinions by Robert Burm.  The Court held an evidentiary hearing on the motion on October 27 and 28, 2005.  Having considered the arguments of the parties and the evidence presented at the hearing, the Court

**FINDS** and **CONCLUDES** that:

### I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II.  Issue Presented

The Court must determine whether Mr. Burm's opinions are admissible pursuant to Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Adopted in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), this rule was revised effective December 1, 2000, to state specific criteria for the admission of expert testimony.  The proponent of expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.  *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1107 (11th. Cir. 2005); *Daubert,* 509 U.S. at 592 n.10.  The proponent of the opinion need not prove that the expert is undisputably correct.  *See Mitchell v. Gencorp Inc.,* 165 F.3d 778, 781 (10th Cir. 1999).  However, the proponent must

show that the method employed by the expert in reaching the conclusion is sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements. *See id.* A court's focus generally should not be upon the precise conclusions reached by the expert, but upon the expert's qualifications, information relied upon and the methodology employed in reaching those conclusions. *See id.* at 595; *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

As Rule 702 instructs, in assessing the expert's qualifications, a court considers his or her knowledge, skill, experience, training, or education. *See United States v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983). Any one of these can be sufficient to support a finding that an expert is qualified. *See* Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments. Indeed, in some fields, experience alone is the "predominant, if not sole, basis for a great deal of reliable expert testimony." *See id.*

Assessing the adequacy of the information relied upon calls for a quantitative, not a qualitative, analysis. *See id.; see also United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th Cir. 2005). A court does not assess the credibility of the facts relied upon by the expert, nor does it resolve factual disputes among competing experts.

In evaluating the expert's reasoning or methodology, the Court may consider many different factors including, but not limited to: (1) whether a theory has been or can be tested or falsified – that is, whether the expert's theory can be challenged in some objective sense or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4)

whether the theory or approach has "general acceptance" in the scientific community. *See Daubert,* 509 U.S. at 593-94. In addition, the Court may consider: (1) whether the expert employed the same degree of intellectual rigor in testifying as he would be expected to employ in his professional life; (2) whether the expert proposes to testify about matters growing naturally and directly out of research he or she conducted independent of the litigation or whether the expert developed opinions expressly for purposes of testifying; (3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (*i.e.,* whether there is too great an analytical gap between the data and the opinion proffered); (4) whether the expert adequately accounted for obvious alternative explanations; (5) whether the expert was as careful as he or she would be in regular professional work outside of paid litigation consulting; (6) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give; (7) the extensiveness of the expert's credentials; (8) the expert's ability to articulate a process that he or she applied; (9) whether the industry adheres to a particular practice; and (10) whether the opinion consists of summary conclusions or broad generalizations based on perfunctory analysis with no supporting specifics.

### IV. Analysis[1]

**Opinion 1**

Opinion 1 is as follows: "If the discharges from the Moffat Tunnel Cribbing Wall and the Squaw Gulch Pond had been presented to me during my employment at EPA, I would have treated them as being subject to the NPDES permitting requirements of the Clean Water Act."

---

[1] The Plaintiffs have proffered eleven opinions from Mr. Burm. These are Opinions 1, 2, 3, 4, 6, 7, 9, 10, 12, 14 and 15. There are no opinions numbered 5, 8, 11 or 13.

The Defendants challenge this opinion for "lack of qualification, insufficient facts or data, and unreliable methodology." They also contend that this opinion is inadmissible because it is an opinion of law.

The Court finds that Mr. Burm has sufficient qualifications to render the opinion. He is a professional engineer who worked for the EPA for more than 30 years. He spent approximately 25 years working in the NPDES permit program and worked as the chief of the permit program for EPA Region 8 for almost 4 years. While at the EPA, he made numerous determinations as to whether a particular discharge required an NPDES permit, and some permits were issued for mine sites.

Mr. Burm used the following methodology in reaching his opinions: (1) gathering data from the EPA office or the potential permittee; (2) visiting the site for visual assessment of whether: (a) there is a manmade structure; (b) there is water coming out of such structure; (c) there are pollutants in the water; and (d) the water can be tracked into receiving water; (3) taking photographs and videos; (4) taking water samples for testing; and (5) conducting further research on EPA policies. Such methodology is consistent with the methodology used by him while employed by EPA and is consistent with that used by others at the EPA for assessing whether to require a permit. Therefore, the Court finds that this methodology is reliable.

Opinion 1 is also based upon sufficient facts and data. Mr. Burm visited the alleged discharge sites seven times between June 2001 and September 2004. During each visit, he conducted a visual inspection of the structures, the sources of water, the direction of the water flow, and any water treatment in place. He took water samples for testing as well as pictures and video of the site.

Whether the first opinion should be excluded as a legal opinion, however, is a close call. Rule 702 allows expert testimony if it assists the trier of fact "to understand the evidence" or "to determine a fact in issue," but it does not authorize an expert to give an opinion as to the applicable law or to apply particular law to the facts in dispute. This is consistent with prior caselaw. *See Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). Although an expert may opine as to an ultimate fact in accordance with Fed. R. Evid. 704, the expert cannot offer an opinion "which articulates and applies the relevant law" to the facts. *See id.* at 808. This is because such testimony could impermissibly act as a substitute for jury instructions as to the applicable law or could direct the factfinder's application of the law to the facts. *See id.* at 810. An expert may refer to the law when expressing an opinion, so long as the expert does not attempt to define the legal parameters within which the fact-finding function must be exercised or apply the law to the facts in dispute. *See id.* at 809-10.

Obviously, these risks are greatest when a jury is the factfinder. A jury might believe the witness rather than the Court as to what law applies; the role of jury instructions is undermined when litigants call their respective witnesses to offer conflicting opinions as to the applicable law. In addition, there is a danger that if the expert applies the law to the facts, the jury may simply defer to the expert and thus abandon its duty to find the facts and apply the law to such facts. When a trial is to the Court, these risks are greatly lessened. The Court is not likely to defer to a witness' opinion as to what or how the law applies. This lack of deference, however, may lessen the relevance of such testimony.

The method Mr. Burm used to decide whether discharges were subject to regulation during the 30 years he was employed at the EPA is useful to the Court in viewing the evidence.

To the extent that this opinion is viewed as an illustration of how the regulations would have been applied while he was employed at the EPA, it can be viewed as a non-legal opinion. However, to the extent that the Plaintiffs offer it to show that a permit was required for the alleged discharges, it is an inadmissible legal opinion. This will be tried to the Court, and the Court will disregard the impermissible aspect of the opinion. Thus, the opinion is admissible for the limited purpose specified.

### Opinion 2

Opinion 2 is as follows: "If Cripple Creek, Arequa Gulch, Fourmile Creek and Squaw Gulch had been presented to me during my employment at EPA, I would have treated them as 'navigable waters' for purposes of the NPDES permitting program of the Clean Water Act." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, unreliable methodology, and as a legal opinion.

For the reasons set forth with regard to Opinion 1, Mr. Burm is qualified to render this opinion. The methodology for this opinion is the same as for Opinion 1, and is reliable. The opinion is also based upon the same facts and data as Opinion 1.

The analysis of whether the second opinion is a legal opinion is the same as that applied to the first opinion. To the extent that this is an illustration of what Mr. Burm would have concluded as a regulator, it is useful to the Court's appreciation of the evidence. However, to the extent that Mr. Burm states that as a matter of legal interpretation, Cripple Creek, Arequa Gulch, Fourmile Creek and Squaw Gulch are navigable waters under the Clean Water Act, it is an inadmissible legal opinion. Because the Court will disregard any conclusions made by Mr. Burm on the ultimate question of law, it is admissible for the limited purpose specified.

**Opinion 3**

Opinion 3 is as follows: "It is my opinion that the discharges from the Moffat Tunnel Cribbing Wall and Squaw Gulch Pond will continue to occur in the foreseeable future." As with the prior opinions, the Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology and contend that it is a legal opinion. However, this opinion is not based upon an identified, reliable methodology.

Mr. Burm's apparent methodology for predicting future discharges is based upon an extrapolation of past discharges viewed at the site or reviewing prior reports of discharges. There is no evidence that this is a reliable methodology for predicting future discharges. There is no evidence that such methodology is used by others, has been subject to peer review or publication, or has general acceptance within his industry. It therefore does not satisfy the requirements of Rule 702. It is unnecessary to determine whether this opinion is a legal opinion. Opinion 3 is excluded.

**Opinion 4**

Opinion 4 is as follows: "If the discharge from the Roosevelt Tunnel and/or portal had been presented to me during my employment at EPA, I would have treated it as being subject to regulation under the NPDES permitting program of the Clean Water Act." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology and contend that this opinion constitutes a legal opinion. The Court's ruling on Opinion 4 is the same as its ruling with regard to Opinion 1.

**Opinion 6**

Opinion 6 is as follows: "It is also my opinion that at the time this case was filed, neither a

permit nor other remedies were in place at the Roosevelt Tunnel to completely eliminate the unpermitted discharge violation alleged by Plaintiffs." At the hearing, the parties agreed that Opinion 6 is factual testimony. Therefore, the Court does not consider its admissibility at this juncture.

**Opinion 7**

Opinion 7 is as follows: "If the discharge from the Carlton Tunnel Ponds and/or Waste Rock Dump had been presented to me during my employment at EPA, I would have treated them as being subject to regulation under the NPDES permitting program of the Clean Water Act." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology, and contend it is a legal opinion.

The Court's ruling on Opinion 7 is the same as its ruling with regard to Opinion 1.

**Opinion 9**

Opinion 9 is as follows: "It is my opinion that the seepage from the Carlton Tunnel Ponds and/or Waste Rock Dump had not been completely eliminated on November 27, 2000." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology.

The Plaintiffs identified no reliable methodology used to formulate this opinion. Either it is a summary opinion with no supporting analysis, or it is simply factual testimony based on observation. As an opinion, Opinion 9 is excluded. It may be appropriate factual testimony if appropriate foundation is laid.

**Opinion 10**

Opinion 10 is as follows: "If the discharge from the Valley Leach Facility, underdrains,

pumpback system, sediment/treatment ponds, and/or Arequa Gulch Outfall 001A had been presented to me during my employment at EPA, I would have treated them as being subject to regulation under the NPDES permitting program of the Clean Water Act." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology and contend that it is a opinion of law.

The Court's ruling on Opinion 10 is the same as its ruling with regard to Opinion 1.

**Opinion 12**

Opinion 12 is as follows: "If the discharge from the Carlton Tunnel Outfall 002 had been presented to me during my employment at EPA, I would have treated it as being subject to regulation under the NPDES permitting program of the Clean Water Act." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology, and contend that this opinion constitutes a legal opinion.

The Court's ruling on Opinion 12 is the same as its ruling with regard to Opinion 1.

**Opinion 14**

Opinion 14 is as follows: "It is also my opinion that on November 27, 2000 and May 6, 2002, remedies were not in place to completely eliminate the Clean Water Act violations alleged at Arequa Gulch." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology.

Although the parties did not address this issue, Opinion 14 is of the exact same nature as Opinion 6. It is factual testimony. Therefore, the Court does not address its admissibility at this juncture.

**Opinion 15**

Opinion 15 is as follows: "It is my opinion that adequate remedies were not in place on November 27, 2000 to completely eliminate the effluent violations alleged at Carlton Tunnel Outfall 002." The Defendants challenge this opinion for lack of qualification, insufficient facts or data, and unreliable methodology.

Opinion 15 is of a slightly different nature than Opinions 6 and 14. Whereas Opinions 6 and 14 report Mr. Burm's observations that no remedies were in place at the alleged point sources, Opinion 15 reports Mr. Burm's view that any remedies in place were not adequate. Therefore, this is an expert opinion subject to challenge under Rule 702.

The Plaintiffs have not established that this opinion is supported by a reliable methodology. Mr. Burm testified that in deciding whether there were remedies in place to eliminate a violation, he: (1) drew upon his experience with waste treatment as well as his knowledge of systems that had worked or failed to work in the past; (2) visited the site and conducted a visual inspection to see what water treatment was in place; and (3) looked at discharge monitoring reports to determine whether an installed treatment control system was properly working. However, there is no evidence that this is an acceptable method for determining whether there are adequate remedies in place to deal with a discharge which allegedly violates the Clean Water Act. No evidence was presented that this technique is adhered to in Mr. Burm's industry. There also was no evidence as to what information Mr. Burm gleaned from the discharge monitoring reports which led him to believe that any remedies in place were inadequate, and why he reached such conclusion. In other words, there is too great of an analytical gap between the data and the opinion proffered. Therefore, Opinion 15 is excluded.

**IT IS THEREFORE ORDERED** that the parties' joint motion **(#251)** under Fed. R.

Evid. 702 asking the Court to determine the admissibility of opinions by Robert Burm is **GRANTED IN PART** and **DENIED IN PART**.  Opinions 1, 2, 4, 7, 10, and 12 are admissible to the extent set forth in this Order.  Opinions 3, 9, and 15 are excluded.  The Court reserves ruling on the admissibility of Opinions 6 and 14 until trial.

Dated this 16th day of November, 2005

**BY THE COURT:**

_____
Marcia S. Krieger
United States District Judge